IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JERRA V. BOWDEN** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | **No. 16-1272** |
| | : | |
| **DB SCHENKER** | : | |
| | : | |

# MEMORANDUM

**KEARNEY, J.**  July 25, 2016

    A terminated at-will employee introducing an assembly line process to help her employer improve productivity in the repair of products generally cannot sue her former employer for the alleged value of her beneficial but arguably long-established assembly line idea.  Such a concept would turn agency law on its head.  The employee's good ideas are owned by the employer unless funded solely by the employee and new, innovative and inventive. Implementing the employee's long-known ideas does not constitute misappropriation of an idea, unjust enrichment or entitle the employee to *quantum meruit*.  In very limited situations, such as where the employer agrees to compensate an employee for a particular novel and concrete idea, a court may find an employee states a claim. Even then, alleging damages is difficult unless the employee can plead in good faith her idea resulted in an employer's increased net profits tied to her truly novel and concrete idea.  Absent such good faith allegations, we cannot find an at-will employee implementing an assembly line protocol to more efficiently repair Apple iPhones and related products for her employer hired by Apple to repair these products, has created such a novel and concrete idea to hold her former employer liable for "stealing" her ideas or for being unjustly enriched.  In the accompanying Order, we grant the employer's motion to dismiss as the former at-will employee has not and cannot plead a basis for relief.

**I. Alleged facts.**

Jerra V. Bowden claims her former employer DB Schenker stole ideas she allegedly implemented as an at-will employee between 2013 and 2015.[1] Bowden began working at Schenker's Carlisle, Pennsylvania, facility in September 2013 after her former employer, Apple Inc., closed certain California offices and contracted Schenker to perform "value added" operations on its behalf.[2] Schenker's "value added" operations included servicing, cleaning, testing, repairing and refurbishing Apple products such as the iPhone, iPad, Apple Watch and MacBook.[3] Schenker then allegedly recruited Bowden to relocate from California to Pennsylvania due to, and based on, her former employment with Apple products and management.[4]

While a Schenker at-will employee, Bowden worked as a Line Lead Supervisor in the Repair and Reclaim division in its Carlisle plant.[5] As a Line Lead Supervisor, Bowden allegedly managed ten to twelve of Schenker's Repair and Reclaim workers.[6] She alleges the Repair and Reclaim division would receive an Apple product, run tests to determine defect with the product and then sort the salvageable products corresponding to the diagnosed defect.[7] Bowden claims before Schenker implemented her ideas, Schenker's Repair and Reclaim employees would "perform all tasks per retail unit," resulting in poor production totals when compared to target production goals.[8]

Bowden alleges she introduced a new process to increase the Repair and Reclaim division's efficiency.[9] Bowden's alleged process rearranged Repair and Reclaim workers into an "assembly line system approach to the task, based on her understanding of the functionality of the Apple products."[10] Bowden alleges this assembly line system allowed Schenker to "a) record how many units were reviewed; b) what teams worked on what units; and c) how each team achieved the percentage of productivity goals."[11] While Bowden pleads the complete novelty and

2

originality of her ideas, she also alleges Schenker did not implement her strategies until after her Schenker supervisors reviewed the procedures and Schenker's engineers tested them.[12] Bowden claims Schenker then created computer models based on her ideas, used her ideas in other operating divisions and used them as a marketing tool in the Netherlands.[13]

Schenker ended Bowden's at-will employment on July 22, 2015.[14] Bowden now seeks compensation for the assembly line process she introduced to Schenker during the course of her employment.[15] She broadly claims her idea of an assembly line process benefited her former employer but has not alleged how her idea, even if novel and concrete, resulted in Shenker's increased net profits.

**II. Analysis**

Bowden claims misappropriation of ideas, unjust enrichment and *quantum meruit* under New York and Pennsylvania law, declaratory and injunctive relief.[16] Schenker moves to dismiss[17] arguing Bowden does not allege facts: supporting misappropriation because her idea cannot be considered novel, concrete or misappropriated; showing how Schenker has been unjustly enriched; and, stating a plausible claim for *quantum meruit*.[18] Bowden conceded her claims are governed by Pennsylvania law during our extensive oral argument and no longer sought relief under New York law as there is no real conflict of laws between the states.

    **A.**    **Bowden fails to state a plausible claim for misappropriation of ideas.**

Bowden's misappropriation of ideas claim must be dismissed because she fails to plead sufficient facts to show her ideas were novel, concrete or misappropriated by Schenker.

A plaintiff seeking relief for misappropriation of ideas must show: "(1) the plaintiff had an idea that was novel and concrete, and (2) his idea was misappropriated by the defendant."[19] Schenker first challenges whether any at-will employee can state a claim for relief for

3

misappropriation of ideas outside of the advertising context and then claims, even if misappropriation of ideas applies to the assembly line procedure alleged in this case, Bowden fails to state a claim for which relief can be granted.

> **1. Bowden cannot state a claim for an assembly line repair protocol being novel or able of misappropriation given her judicial admissions.**

Even if we recognized a claim under Pennsylvania law allowing an at-will employee to state a claim for a former employer misappropriating her ideas for assembly line procedures, "a threshold requirement for an idea misappropriation claim is that the plaintiff's idea be novel and concrete."[20] Bowden fails to plead any facts allowing us to plausibly find her assembly line idea is (1) concrete, (2) novel, or (3) misappropriated. She argues the idea is novel to Schenker and helped it become more productive.

"Concreteness [is] required so that the court [can] identify the idea as having been created by one party and stolen by another."[21] Bowden fails to plead facts supporting she "created" the assembly line approach she recommended to Schenker's management.[22] Claiming to "provide additional details of the process" at trial does not suffice. Bowden does not allege sufficient facts to show her idea is concrete.

An idea is considered "novel and merits protection when it is truly innovative, inventive, and new."[23] Again, Bowden fails to plead how her assembly line idea is inventive or new. While Bowden alleges her assembly line idea transformed Schenker's repair and reclaim work, this efficiency does not mean the idea is new, and Schenker fails to plead a fact supporting this conclusion. We decline to read or infer these material facts, as we cannot imagine facts where an idea largely credited to Ransom Olds and Henry Ford over a century ago can be inventive or new. Bowden should be congratulated for her initiative, but we cannot presently see how

assembly line repair of damaged products is inventive or new *ab initio.* We find Bowden does not allege sufficient facts to show the novelty of her assembly line idea.

Even if the assembly line idea is new and inventive, Bowden must plead misappropriation by: (1) making "a substantial investment of time, effort and money into creating the thing misappropriated such that the court can characterize that 'thing' as a kind of property right," (2) showing Schenker "appropriated the thing at little or no cost, such that the court can characterize defendant's actions as reaping where it has not sown," and (3) showing Schenker "injured plaintiff by the misappropriation."[24] Bowden fails to plead how her idea can be considered a property right, or how Schenker "reaps where it has not sown." To the contrary, Bowden pleads Schenker spent time and effort subjecting her idea to a time and motion study, modify the procedures and converting the ideas into computer programs.[25] As one of Schenker's employees, Bowden's ideas were an extension of the work Schenker paid her to do. We cannot see how Bowden can plead her investment of time, effort and money and Schenker has not. She has not plead it and admitted the opposite. This issue is not disputed.

Absent a promise not to use employee's ideas and thus possibly raising a breach of contract or showing newness, inventiveness and innovation in using an assembly line to repair products, we cannot impose potential liability upon an employer who adopts its employee's recommendation to adopt an assembly line approach to meet a client's demand. Doing so would create a disincentive for employers to encourage innovation from its paid employees. Bowden is a paid employee bringing good ideas to her work in exchange for her pay. She is not inventing new business methods through an assembly line repair system for products.

### 2.     Misappropriation of advertising ideas does not apply.

We find no case supporting a cause of action for an employer's misappropriation of an employee's ideas outside of an advertising context.[26]  Both parties cite *Blackmon* as a demonstrative misappropriation of ideas case. In *Blackmon*, a friend of the former professional basketball player Allen Iverson allegedly proposed Iverson refer to himself as "The Answer" for advertising purposes.[27]  Iverson allegedly made repeated promises to compensate his friend for his idea if Iverson ever began to use it.[28] Iverson began to use the idea as a part of his Reebok shoe deal but did not pay his friend for the idea.[29]  The friend sued Iverson for misappropriation of ideas, alleging he "suffered a loss when [Iverson] did not pay him for the use of the idea."[30]  Although both parties agreed the friend created "The Answer" advertising idea, the court dismissed the friend's complaint because it did not state the elements of an idea misappropriation claim.[31]

Bowden cites *Eagle* and *Barbiaz* in arguing Pennsylvania courts "recogniz[e] the misappropriation of ideas beyond recognizing misappropriation of an idea in an advertising context."[32]  We find both cases address advertising issues. In *Eagle*, the misappropriation of ideas dispute arose from an employer's use of a former employee's LinkedIn profile, which the company ran on her behalf for advertising and marketing purposes.[33] The court observed the employer "used [plaintiff's] account to promote [the company's] banking education services; foster her reputation as a businesswoman; reconnect with family, friends, and colleagues; and build social and professional relationships."[34] Judge Buckwalter also found a dispute as to whether the defendant provided any effort towards the success of the plaintiff's idea. In *Barbiaz,* Judge Herron addressed an employee's claim after submitting an advertising idea to his employer as a part of a company wide marketing idea campaign and agreement aptly titled, "Idea Submission Form."[35] The court in *Barbiaz* dismissed the misappropriation of idea claim and then

considered whether the employee could state a contract claim based on the employer's "Idea Submission Form."

We do not see how these cases support Bowden's argument for misappropriation of ideas.[36] Unlike Bowden's cited authorities, she did not create the assembly line idea as a marketing tool. She admits Schenker invested time and effort in studies, modifying her idea and creating software to use the idea. She implemented an assembly line approach to refurbishing Apple products. Schenker never promised compensation for this, or any, idea. As Bowden pleads, Schenker recruited her because of her familiarity with Apple and its products. Bowden alleges Schenker used her assembly line process as a marketing tool in a presentation in the Netherlands. Assuming the allegation is true, Schenker marketed its productivity in a Netherlands presentation. This marketing does not turn her assembly line idea into the novel or concrete idea necessary for this claim. Unlike *Eagle*, Bowden did not create the marketing allegedly being stolen.

### B. Bowden fails to plead unjust enrichment.

Bowden fails to state a claim for unjust enrichment because she does not allege facts tending to show Schenker unjustly profits from her introduced idea as a part of her at-will employment. The most significant element of the doctrine is whether the enrichment of the defendant is unjust.[37] The elements of unjust enrichment are "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."[38] To the contrary, it may be more unjust to have an employer pay the employee the agreed wage and then pay more when the employee has a good idea under an unjust enrichment theory.

Reviewing an employee's action against his former employer after the company refused to buy stock options at a price it previously offered, the court in *McGoldrick* found an employee cannot claim unjust enrichment if they are just doing their job: "[i]n consideration of the elements of an unjust enrichment claim, this Court fails to see how Mr. McGoldrick's performance of his job has unjustly enriched [his employer]. Mr. McGoldrick's performed his job and was compensated with his salary."[39]

Bowden argues Schenker has been unjustly enriched because its operations are more efficient after implementing her ideas. Schenker, after review by supervisors and engineers, introduced the assembly line idea as a part of Bowden's job. Bowden fails to allege facts showing Schenker's use of the production tactics are unjust.[40] Alleging Schenker "increased profits derived from the origination and implementation of [Bowden's ideas]" is not in itself sufficient to support a claim for unjust enrichment.

**C. Bowden does not state a claim for *quantum meruit*.**

Bowden cannot plead a *quantum meruit* claim. A plaintiff seeking *quantum meruit* "must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider."[41]

In *Herbst*, an attorney brought an action against his former employer for *quantum meruit* after the employer did not pay him a bonus after they terminated him.[42] The Court dismissed the attorney's *quantum meruit* claim, noting "Plaintiff has not shown that he did anything more than work to the best of his abilities for defendant as he was engaged to do. The award of a bonus and indeed the incentive bonus program itself were discretionary and by its terms did not apply to any employee … who was terminat[ed] prior to distribution."[43]

Bowden does not allege she brought ideas to Schenker besides what she was compensated for in the scope of her employment. Further, we do not see how Schenker retaining Bowden's assembly line approach is "unconscionable" following her departure. Reaching such a conclusion would be a threatening proposition for the business community, and we reject to find an employer can be held liable for retaining non-protectable ideas of its employees. As in *Herbst*, Schenker had complete discretion to terminate Bowden if it deemed appropriate. For these reasons, we dismiss Bowden's *quantum meruit* claim..

### D. Bowden pleads no basis for declaratory relief.

We find Bowden has not plead a basis for declaratory relief. A federal district court may "in a case of actual controversy within its jurisdiction declare the rights and other legal relations of any interested party."[44] As shown, we see no novel and concrete idea warranting extraordinary protection.

### E. We cannot grant injunctive relief.

We cannot grant Bowden injunctive relief because she does not allege facts to state any claim. "A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief."[45] Bowden has no likelihood of success on the merits. We dismiss her request for injunctive relief.

### III. Conclusion

Employees are paid to increase the employer's production. Employers recruit and hire experienced workers like Bowden presumably hoping experienced employees have ideas to

9

improve the employer's net profits. Bowden has not plead facts allowing us to proceed on a claim against her former employer Schenker for misappropriating an assembly line protocol for repairing and refurbishing Apple iPhones and similar products. Even assuming Schenker and the marketplace found her idea to be helpful, she has not plead a basis for us to find the assembly line repair of products is a new, inventive or innovative idea which may possibly give rise to a claim by an at-will employee against her former employer. Plaintiff's lawyer argued he could, under Rule 11 and given an opportunity, plead the assembly line protocol is new, inventive and innovative and the former employer wrongly stole the idea creating net profits. When asked, counsel could not cite authority for such an employee claim outside of a written agreement or where there is a dispute as to who funded and invested the time and effort into a marketing idea. While her claim seeks a good faith extension of Pennsylvania law, we cannot envision Bowden ever being able to plead the requisite facts in light of the present admissions in her Complaint and under Rule 11(b), and decline leave to amend the Complaint.

---

[1] (ECF Doc. No. 1).

[2] (*Id.* at ¶ 20).

[3] (*Id.* at ¶ 21).

[4] (*Id.* at ¶ 39).

[5] (*Id.* at ¶ 24).

[6] (*Id.*)

[7] (*Id.* at ¶ 28).

[8] (*Id.* at ¶¶ 28-29).

[9] (*Id.* at ¶¶ 30-35).

[10] (*Id.* at ¶ 30).

[11] (*Id.* at ¶ 34).

[12] (*Id.* at ¶¶ 31-34).

[13] (*Id.* at ¶ 38).

[14] (*Id.* at ¶ 20).

[15] (*Id.* at ¶¶ 1-72).

[16] (*Id.*).

[17] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors*, *Inc.,* 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Our Court of Appeals requires we apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d. Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d. Cir. 2010).

[18] (*See* ECF Doc. No. 7).

[19] *Blackmon v. Iverson*, 324 F. Supp. 2d 602, 607 (E.D. Pa. 2003) (citing *Sorbee Int'l Ltd. v. Chubb Custom Ins. Co.*, 735 A.2d 712 (Pa. Super. Ct. 1999)).

[20] *Blackmon*, 324 F. Supp. 2d. at 607.

[21]  *Id.*

[22] (See ECF Doc. No. 1, 30-34).

---

[23] *Blackmon*, 324 F. Supp. 2d. at 608.

[24] *Sorbee,* 735 A.2d at 716.

[25] (ECF Doc. No. 1, ¶¶ 32, 33, 38).

[26] (*See* ECF Doc. No. 7-2 ("Moreover, to the extent *Blackmun* involves misappropriation of ideas, it is limited to misappropriation of *advertising* ideas.")).

[27] *Blackmon*, 324 F. Supp. 2d at 604.

[28] *Id.*

[29] *Id.*

[30] *Id.* at 610.

[31] *Id.* ("The complaint also fails to allege the first two elements of a misappropriation claim: a substantial investment of time, effort, and money into creating an idea that the defendant has appropriated at little or no cost.").

[32] (ECF Doc. No. 13, at 15).

[33] *Eagle v. Morgan,* No. 11-4303, 2011 WL 6739448 (E.D. Pa. Dec. 22, 2011).

[34] *Id.*

[35] *Barbiaz v. Bell Atlantic-Pennsylvania, Inc.*, No. 1863 Aug. Term 2000, 2001 WL 1808554, at *3  (Pa. Com. Pl., July 10, 2001).

[36] *Id.*

[37] *Styer v. Hugo,* 619 A.2d 347, 350 (Pa. Super. 1993), *aff'd*, 637 A.2d 276 (Pa. 1994)

[38] *Id.;Wolf v. Wolf*, 514 A.2d 901 (Pa. Super.  1986), *overruled on other grounds*, *Van Buskirk v. Van Buskirk*, 590 A.2d 4 (Pa. 1991); *see also Burgettstown-Smith Township Joint Sewage Authority v. Langeloth Townsite Co.*, 588 A.2d 43 (Pa. Super. 1991)); *see also Herbst* at *9 ("one must show that he conferred a benefit upon another, that the recipient realized the benefit and that retention of the benefit under the circumstances would be unjust.").

[39] *McGoldrick v. TruePosition, Inc.*, 623 F. Supp. 2d 619, 625 (E.D.  Pa. 2009).

[40] Bowden misleadingly argues "…[p]laintiff was not compensated for creating these process [sic] – although she did so with the expectation of compensation." If Schenker did not pay her

for her time and effort, she has a remedy under wage payment law, but we know of no precedent requiring employers to pay more to at-will employees because of good work.

[41] *McGoldrick v. TruePosition, Inc.,* 623 F. Supp. 2d 619, 624 (E.D. Pa. 2009) (internal citations omitted); *See also Herbst v. Gen. Accident Ins. Co.*, No. 97–8085, 1999 WL 820194, *9 (E.D. Pa. Sept. 30, 1999) (citing *Hershey Foods Corp. v. Ralph Chapek, Inc.,* 828 F.2d 989, 999 (3d Cir. 1987)) ("must demonstrate that the defendant 'wrongfully secured or passively received' a benefit that would be 'unconscionable' for the recipient to retain without compensating the provider.").

[42] *Herbst* at *9.

[43] *Id.*

[44] 28 U.S.C. § 2201(a).

[45] *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).